IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ALBERT JASON NORMAN,** | ) |
| **Plaintiff,** | ) ) ) |
| vs. | ) ) Case No. 09-CV-514-TLW |
| **MICHAEL J. ASTRUE,** **Commissioner of Social Security,** | ) ) ) ) |
| **Defendant.** | ) ) |

**OPINION AND ORDER**

Plaintiff Albert Jason Norman seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 416(i). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 8].

Plaintiff filed his application for disability insurance on April 18, 2007, claiming an onset date of January 29, 2007. [R. 85]. The relevant adjudicated period is from January 29, 2007 through March 10, 2009.

Administrative Law Judge Deborah Rose ("ALJ"), conducted a hearing on January 7, 2009. [R. 18]. Following entry of her decision denying benefits, the Appeals Council, on June 19, 2009, denied plaintiff's request for review. [R. 1]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981. On August 12, 2009, plaintiff filed the subject action with this Court. [Dkt. # 2].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is only to determine whether substantial evidence supports that decision and whether the applicable legal standards were applied correctly. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237

(10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

A claimant for disability benefits bears the burden of proving that he is disabled.  42 U.S.C. § 423 (d)(5); 20 C.F.R. § 404.1512(a).  "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To meet this burden plaintiff must provide medical evidence of an impairment and the severity of his impairment during the relevant adjudicated period.  20 C.F.R. § 404.1512(b).  Disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques" administered by "acceptable medical sources"  such as licensed and certified psychologists and physicians.  42 U.S.C.§ 423 (d)(3), and 20 C.F.R. § 404.1513.

Plaintiff raises three issues on appeal. :

(1) Whether the ALJ erred at step 1, in finding plaintiff had engaged in substantial gainful activity.

(2) Whether the ALJ erred at step 5, in formulating her hypothetical question to the vocational expert.

(3) Whether the ALJ failed to perform a proper credibility determination.

[Dkt. # 17 at 2].

## **Background**

Plaintiff is a male, born on January 9, 1979. He was 28 years old on his alleged onset date. [R. 15, 85, 176]. Plaintiff has been married and divorced and has two minor children. [R. 20, 107]. He is 5 feet 7 inches tall and weighs 150 pounds. [R. 178]. Plaintiff worked part-time from 1996 to1998 as a sacker for a grocery store. [R. 91-92]. He worked as a welder for Tulsa Steel Manufacturing in 1998, and for Barnes Machine from 2001 to 2003. [R. 93, 133]. In 2004 and 2005, he worked at Arby's Restaurant, MidAmerica Pretzel, and Direct TV. [R. 93, 131-133]. He was a machinist for Weins Machine, from May 2006 to November 2007; for Fabrication Dynamics, from May 2007 until December 2007; and for Downing Manufacturing from May 19, 2008 until October 5, 2008. [R. 26-27, 94, 131].

Plaintiff claims he has been chronically depressed since childhood, but his depression became worse after his son was born in 2003. [R. 158, 161]. He smoked two packs of cigarettes daily for 15 years, but recently quit. [R. 161]. He has a history of substance abuse and dependency on marijuana, Xanax, Lortab, Percocet, Vicodin, and alcohol. [R. 174]. In 2007, plaintiff was consuming a gallon of whiskey every three days. [R. 174, 205]. He started drinking at age 14 and smoking marijuana at age 12. [R. 176]. He quit his job as a machinist in 2007, because of anxiety, drug abuse, and intolerance. [R. 174]. In 2007, plaintiff twice received inpatient care at mental health centers for treatment of substance abuse and depression. [R. 205]. A protective order was issued against him in July 2006, and he has twice been charged with domestic assault and battery. [R. 158, 174, 176]. In 2007, plaintiff admitted being a severe alcoholic. [R. 158]. Plaintiff claims depression, alcoholism, and polysubstance abuse caused him to lose jobs, his home, and led to legal

problems and relationship conflicts. [R. 174, 176]. Plaintiff received counseling, treatment and a medication plan at Tulsa Center for Behavior Health, and was discharged in stable condition on May 10, 2007. [R. 185]. Plaintiff's general physical health is good. [R. 185, 23]. At the hearing, plaintiff's counsel advised that plaintiff was no longer abusing drugs, but he was still struggling periodically with alcoholism. [R. 23]. Plaintiff is a native American and started receiving regular treatment at the Sapulpa Indian Health Center on October 20, 2008. [R. 36-37].

Plaintiff alleges his disability is mental illness, with an onset date of January 29, 2007. [R. 97, 85]. He claims he has had chronic depression and anxiety, since the fifth grade. [R. 23].

The ALJ found that plaintiff had engaged in substantial gainful activity after his alleged onset date of disability because he did not have a 12 month period during which he was not gainfully employed. [R. 11]. However, for administrative efficiency she entered alternative findings through step five, determining that plaintiff was not disabled. [R. 11-16].

At step two, the ALJ found plaintiff's severe impairments to be depression and anxiety. [R. 11]. The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments, specifically listings 12.04 (affective disorders) and 12.06 (anxiety related disorders). [R. 12-13].

The ALJ found plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, from October 2008 to the present, limited to simple routine tasks and with only occasional interaction with the public. [R. 13]. The ALJ found plaintiff's testimony less than credible concerning the intensity, persistence and limiting effects of his symptoms. [R. 17]. The ALJ determined that plaintiff could not perform his past work, as a welder, fast food worker, machinist and customer service representative. [R. 15]. Based on the testimony

of the vocational expert, the ALJ found that plaintiff was qualified to work as a dishwasher, bench assembler, housekeeper, or clerical mailer and these jobs existed in sufficient numbers to preclude disability. [R. 16]. The ALJ's findings were made at steps one, and alternatively at step five, in the sequential evaluation outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[1]

## Discussion

Plaintiff challenges the ALJ findings at step one that plaintiff had engaged in substantial gainful employment (activity) following his alleged onset date, arguing that plaintiff's work as a machinist for Downing Manufacturing from May 19, 2008 until October 5, 2008 was an "unsuccessful work attempt" as defined under SSR 84-25. [Dkt. # 17 at 2]. The Court disagrees. The ALJ found:

> Mr. Norman stopped work on his alleged onset [January 29, 2007]. But he resumed working in May or June 2007 and then worked to December 2007. He worked 40-56 hours a week as a machine operator. In eight months, he earned $11,639.58. This constitutes substantial gainful activity. From May to October 2008, he worked 40 hours a week in a manufacturing concern. There, he made $12.00 an hour. Therefore, Mr. Norman has not had any 12 month period during which he was not performing substantial gainful activity.

[R. 11]. After his purported onset date, plaintiff worked as a machinist eight months in 2007, and six month in 2008, producing earnings showing substantial gainful employment in both years. Thus, plaintiff does not meet the requirements to satisfy the step one criteria for disability. To avoid this

---

[1] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-52).

result, plaintiff argues his work in 2008 should be construed as an "unsuccessful work attempt" because he was too depressed to work. [R. 30]. As discussed below, the Court finds there is substantial evidence to support the ALJ's decision at step 5 that plaintiff is not disabled, and thus voluntarily quitting his job in 2008 does not qualify as an unsuccessful work attempt.

As his second issue of error, plaintiff contends the ALJ propounded an improper hypothetical question to the vocational expert, resulting in an unreliable RFC assessment. [Dkt. # 17 at 3]. Plaintiff claims that the ALJ's hypothetical failed to include his low global assessment functioning ("GAF") score ranging from 30 to 60; other alleged impairments including hypertension, seizure episodes, neuropathic pain; and opinions from his treating and examining physicians. The Court finds no merit to this argument.

The ALJ acknowledged that plaintiff received a GAF score of 35 during his examination by Tracy Loper, M.D. at the Hillcrest Medical Center on February 16, 2007. Dr. Loper attributed plaintiff's low GAF score to the "psychomotor agitation" presented to him on that date, and opined that his condition would stabilize with medication. The ALJ stated:

> In the month after his alleged onset, Mr. Norman told a Hillcrest clinician that his constant worrying kept him awake at night. He worried even when he did not feel particularly depressed and he obsessed about "what if" possibilities. He was convinced that his intense worrying created the pressure in his neck and shoulders to bring about his headaches. He drank heavily and opined that this had interfered with his marriage and his work. Examiner Tracy Loper, M.D. noted he had considerable psychomotor agitation and that his affect was blunted. She put the claimant's Global Assessment of Functioning at 35 but believed he was stabilized by his medications (Exhibit 1F, pgs. 21-23).

[R. 14]. Thus, the Court finds no error in the ALJ's failure to include a low GAF score in her hypothetical question. Additionally, the ALJ took into consideration other medical evidence to show that plaintiff's psychological problems and substance abuse was stabilized when he maintained his

prescribed medication plan. The ALJ found:

> The claimant's records show that he failed to take his psychotropic medications from early July 2008 until late October 2008. After his medications were adjusted and he became compliant, his mood and emotional balance and outlook improved. A December 30, 2008 record from Sapulpa Indian Health Clinic indicates that Mr. Norman was feeling better and out job hunting (Exhibit 6F, p.1).

[R. 14]. The ALJ cited corroborating evidence.

> The claimant's two hospitalizations have been for his substance abuse. He would not have needed treatment if not for his drug and alcohol abuse. He began treatment for depression and anxiety only in October 2008. The fact that he worked at substantial gainful activity until October 2008 shows that his impairments were not as severe as he alleged. In sum, the above residual functional capacity assessment is supported by the Disability Determination Service's Mental Residual Functional Capacity Assessment (Exhibit 3F) and Psychiatric Review Techniques (Exhibit 4F).

[R. 14-15]. Thus, the ALJ did take into consideration medical evidence of plaintiff's psychological evaluation, which is similar to those used to arrive at a GAF score. The Tenth Circuit has stated that, "a low GAF score does not alone determine disability, but it is instead a piece of evidence to be considered with the rest of the record." Petree v. Astrue, 260 Fed.Appx. at 42 citing Howard v. Comm'r of Soc.Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.").[2]

Plaintiff alleges the ALJ failed to consider the opinions of his treating and examining physicians. The Court finds no merit to this contention. The ALJ adopted the mental RFC assessment of Shannon Swallow, Ph.D. [R. 219-221]. Dr. Swallow opined that plaintiff had moderate restriction in all three relevant categories of daily living activities, social functioning, and concentration, persistence and pace and had experienced one or two episodes of decompensation.

---

[2] A GAF score is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. See American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000).

[R. 233]. She found that plaintiff could perform simple and some complex tasks, relate to others on a superficial basis and could adapt to a work situation. [R. 221]. From reviewing plaintiff's medical history, Dr. Swallow noted that a CT scan and MRI taken on April 19, 2007, following a drug detox seizure, showed that plaintiff's head was normal and his EEG was normal. All his laboratory reports were well within normal limits and he was "released to home to resume normal activities and continue medications." [R. 235]. From a review of his medical history and her assessments, Dr. Swallow concluded that "with compliance to treatment" plaintiff could do simple and some complex tasks." [R. 235].

In regards to plaintiff's treating physicians, plaintiff fails to identify an opinion by any other physician of record that contradict's Dr. Swallow's assessment. In fact, the ALJ noted that she gave great weight to Dr. Shallow's assessment because "the evidence supports them and does not contract them." [R.15]. From a review of the record, this Court agrees with that conclusion.

Plaintiff faults the ALJ for failure to consider other alleged impairments including hypertension, seizure episodes, and neuropathic pain. Plaintiff is correct that hypothetical questions must reflect with precision all of plaintiff's impairments. However, they need only reflect impairments and limitations that are borne out by the evidentiary record. Evans v. Charter, 55 F.3d 530, 532 (10th Cir. 1995). There is no evidence that these conditions were not controlled by plaintiff's prescribed medication plan, nor that they were disabling. The Court finds that the limitations contained in the ALJ's hypothetical question which restrict plaintiff's work to "simple tasks and to only occasional interaction with the public" properly reflect and account for the impairments and limitations that are borne out by the evidence.

The ALJ's assessment of plaintiff's RFC is consistent with that of the mental RFC

assessment made by the consultative psychologist, Dr. Swallow which was affirmed by agency psychologist Dr. Carolyn Goodrich, Ph.D. [R.237]. Their opinions were uncontroverted. The ALJ properly considered all the evidence of record and relied on the evidence as a whole to formulate plaintiff's RFC. She gave specific evidentiary reasons to support her conclusion that plaintiff had the mental RFC to work, with specific limitations. The vocational expert testified that jobs were available in the region that plaintiff could perform. The Tenth Circuit instructs that "[h]ypothetical questions posed to vocational experts must sufficiently relate the claimant's particular physical and mental impairments. However, this court has held that the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ, and a hypothetical question will be improper only if it was clearly deficient." Stowe v. Shalala, 13 F.3d 407 (10th Cir, 1993) (unpublished).[3] The Court finds that the limitations contained in the ALJ's hypothetical question reflect and account for the impairments and limitations that are borne out by the evidence.

As her third issue of error, plaintiff challenges the ALJ's credibility determination. In discounting plaintiff's credibility, the ALJ determined that plaintiff's repeated failure to follow his prescribed medication plan impeached his credibility as to the severity of his mental impairment.

> The claimant's records show that he failed to take his psychotropic medications from early July 2008 until late October 2008. After his medications were adjusted and he became compliant, his mood and emotional balance and outlook improved. A December 30, 2008 record from Sapulpa Indian Hospital Health Clinic indicates that Mr. Norman was feeling better and out job hunting (Exhibit 6F, p. 1).

[R. 14]. The failure to follow prescribed treatment is a legitimate consideration in evaluating the validity of an alleged impairment. See Diaz v. Secretary of Health & Human Servs., 898 F.2d 774,

---

[3] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

9

777 (10th Cir.1990) (Secretary properly discounted claimant's alleged impairment due to poorly controlled seizures where claimant failed to follow prescribed treatment regime). An ALJ's credibility findings warrant particular deference because she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002). Thus, the Court finds the ALJ did not err in her assessment of plaintiff's credibility.

## Conclusion

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and that the correct legal standards were applied. Thus, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 30th day of September, 2010.

T. Lane Wilson
United States Magistrate Judge